Levitt & Sons, Inc. v. Commissioner.
Levitt & Sons v. Commissioner
Docket No. 109482.
United States Tax Court
1943 Tax Ct. Memo LEXIS 299; 2 T.C.M. (CCH) 127; T.C.M. (RIA) 43241; May 19, 1943
*299 Louis Goldring, Esq., and Carl Sherman, Esq., for the petitioner. Francis S. Gettle, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined a deficiency in income tax for the fiscal year ended June 30, 1940, in the amount of $14,785.49. The deficiency is contested in part only. The only question is whether petitioner is entitled to a deduction of $65,000, which was paid in settlement of a threatened action in equity for a receivership and an accounting as a business expense or a loss under section 23 (a) or (f) of the Revenue Act of 1938. Findings of Fact Petitioner is a New York corporation having its principal office at Manhasset, New York. Petitioner keeps its books and makes its returns on the accrual basis. Its income tax return for the fiscal year ended June 30, 1940, was filed with the collector for the first district of New York. Petitioner is a wholly owned corporation. It was organized on July 1, 1938. It has 1,000 shares of common stock outstanding, of which sixty or eighty shares are held by Abraham Levitt and Pauline Levitt, and the remaining stock is held by their sons, William J. Levitt and Alfred S. Levitt, *300 and their respective wives. Petitioner is an outgrowth of the partnership of Abraham Levitt & Sons and the Levitt corporations known as Abraham Levitt & Sons, Inc., Strathmore-at-Manhasset, Inc., and Craftsmen's Guild, Inc., all of which were engaged in the real estate and building business. The partnership and the three corporations were merged on July 1, 1938, into the petitioner corporation. The parties have stipulated that under the merger all of the assets and business of the prior existing partnership and corporations were transferred to the petitioner, subject to all of their respective liabilities, in exchange for shares of petitioner's stock which were issued "to said partnership and aforementioned corporations in proportion to their respective net assets." Included in such assets were certain parcels of land and the profits and proceeds of certain lands which were formerly owned by a corporation known as Rockville Center Community Corporation. In 1930 Abraham Levitt was president, treasurer, and general manager, and a director of the Rockville Center Community Corporation, which was organized prior to 1927. He owned 25 percent of the capital stock of that corporation. Rockville *301 Center Community Corporation was engaged in the subdivision of land in Rockville Center, Long Island, New York, and the sale of the subdivided lots to builders. It acquired acreage, subdivided it, and put in roads, sidewalks, curbs, and shade trees. It had been engaged in that business since some time prior to 1927. In 1930, at a time when there was little activity in the real estate business in the sale of subdivided lots, Abraham Levitt formed a partnership with his eldest son, William J. Levitt, to engage in the business of building and selling one-family dwellings. For that purpose, the partnership (later incorporated in 1931 under the name, Abraham Levitt & Sons, Inc.) between December, 1930 and May, 1932, purchased 147 1/2 lots from the Rockville Center Community Corporation and erected residences thereon. These lots were purchased at the prevailing price of approximately $600 per lot, and the total purchase price was $84,980. These transactions with Rockville Center were carried in an open account on the books of Abraham Levitt & Sons. The first transaction took place in December, 1930 and involved the purchase of 16 1/2 lots at a purchase price of $10,560. At that time Rockville *302 Center Community Corporation owed Abraham Levitt, personally, the sum of $12,000, which amount was applied as a credit on the account, and the first purchase was charged against the credit of $12,000. Thereafter, Abraham Levitt & Sons made some cash payments for lots purchased, but over the entire period these cash payments aggregated only $7,500, and the account was credited with this sum. The balance of the purchase price was paid by transferring to Rockville Center Community Corporation, at various times during the period from December, 1930 to May, 1932, 27 purchase money mortgages ranging from $1,800 to $3,000, each, which had been given by purchasers of the houses. Rockville Center Community Corporation became the owner of such mortgages and had full control over them to collect the principal and interest, or to enforce the security by foreclosure. These mortgages were likewise credited to the open account. All but one or two of the mortgages were paid. The building operations of Abraham Levitt & Sons were an immediate financial success. Every house built was sold within ten days after completion. Houses were built on all of the 147 1/2 lots within a period of fifteen or sixteen *303 months, after which Abraham Levitt & Sons continued building operations on other subdivisions in other sections of Long Island outside of the town of Rockville Center. After 1930 and until 1935 it did a business of about one million dollars a year and by 1938 the business had increased to over two millions a year. Abraham Levitt was not an officer or director of petitioner, Levitt & Sons, Inc. His son, William J. Levitt, was the president, general manager, and chief executive. His other son, Alfred Levitt, was the architect, engineer, and designer for petitioner. Abraham Levitt was the landscape artist. He had a small stock interest in petitioner, but he had not taken an active part in its business affairs for several years. Between 1930 and 1939 no complaint was ever made by Rockville Center Community Corporation or its stockholders against petitioner or its predecessor corporations or their stockholders. In the middle part of 1939, one Edelman, through his attorney, Isidore Schneider, made a verbal demand upon petitioner through its president, and on November 10, 1939, made a demand in the form of a letter in which the attorney stated that he had been retained to commence an *304 action in equity against the petitioner to account for certain real property, or the proceeds thereof, received by petitioner in violation of the rights of his clients, in which action he intended to apply for the appointment of a receiver for petitioner. At that time Edelman did not appear as a stockholder of record on the books of the Rockville Center Community Corporation. He had not been, and did not claim to have been, a stockholder of said corporation in 1931 or 1932 when the sales-of-lots transactions took place. On the contrary, he claimed to have become a stockholder by virtue of subsequent assignments to him of all the outstanding stock, except that held by Abraham Levitt. Edelman's attorney was vague in his statements as to the nature of the threatened lawsuit other than to assert "that the Rockville Center Community Corporation had certain real estate and building dealings, and that from these dealings and from the moneys that resulted from those, Levitt & Sons, Inc., and its predecessor corporations were really the result, and that therefore, they should have their proportionate share of the profits of Levitt & Sons, Inc., as represented by their ownership of the stock *305 of the Rockville Center Community Corporation." Thereafter, petitioner retained an attorney who made a full investigation of the matter. His advice to petitioner was that Edelman's demands were without merit, would not support any equitable action and would not be successful. His investigation disclosed that the Rockville Center Community Corporation had been paid the full value for the property acquired by the predecessors of petitioner, and that it was the profits over and above the value of the property and the profits on the profits for which Edelman was making claim against petitioner. The attorney was of the opinion that due to the long period of time intervening between the sale of the lots by Rockville Center Community Corporation in 1930 and 1931, and the date when an action was threatened against petitioner, a period of about 9 years, the claimants could not recover in an equitable action. He was also of the opinion that the predecessors of petitioner corporation had dealt at arm's length with Rockville Center Community Corporation and that there had been no fiduciary relationship between any of petitioner's stock holders and the Rockville Center Community Corporation. *306 In spite of the attorney's advice, petitioner's accountant advised that it would be foolhardy to take a chance of a receivership, and for business and financial reasons he advised that petitioner should offer to compromise the claim of Edelman. An arbitrary figure of $65,000 was reached and petitioner agreed to pay this amount to Edelman in settlement of the threatened litigation. Petitioner's agreement to pay Edelman $65,000 in full settlement of his claim was made during the taxable year. Part of the above sum was paid during the taxable year, and the balance was paid in the succeeding year. The profits which Edelman sought to recover from petitioner were profits which arose prior to the incorporation of petitioner. The operations from which the profits grew took place in 1932, 1933, and not later than 1934. The expense of $65,000 which petitioner incurred during the taxable year was not an ordinary and necessary business expense incurred in carrying on its business. Petitioner did not sustain a loss in the taxable year as a result of its agreement to pay $65,000 in compromise and settlement of Edelman's claim. Opinion The first question is whether the expense of $65,000 which *307 petitioner voluntarily incurred in the taxable year is deductible, under the particular facts, as an ordinary and necessary business expense within the meaning of section 23 (a) (1) of the Revenue Act of 1938. There is no dispute respecting the facts, but there is a difference of opinion as to the construction which should be placed on the facts. Determination of deductibility of expenses under section 23 (a) (1) depends upon the particular facts of each case. The tests to be applied are found in many leading cases to which reference is made without restating the rules. See ; ; and authorities cited in ; affd., The explanation given by respondent in the notice of deficiency for disallowing the deduction was that the amount did not constitute an ordinary and necessary business expense incurred in carrying on business "or an otherwise allowable deduction." Petitioner was organized in July, 1938. It acquired all of the assets of three *308 corporations which had been owned by members of the Levitt family, one of which, Abraham Levitt & Sons, in 1931, had succeeded to the business of a partnership having the same name. The partnership and the corporation had carried on transactions with the Rockville Center Community Corporation, hereinafter called Rockville, during a period from December, 1930 to May, 1932. The real estate which had been purchased from Rockville had been resold by the partnership for cash and purchase money mortgages. Rockville had been paid in full in cash and by assignment of purchase money mortgages and no recognized obligation to that corporation was due from the partnership or the corporation known as Abraham Levitt & Sons. The assignment, itself, of the mortgages was understood to constitute payment on account in the full amount of the mortgages. If the mortgagors did not pay the entire amounts which were secured by the mortgages, the loss was that of Rockville because Abraham Levitt & Sons were not obligated to make good any deficit. The parties have stipulated that there were included in the assets transferred to petitioner corporation in 1938 "certain parcels of land and the profits and proceeds *309 of certain lands which were formerly owned by Rockville Community Center Corporation." Also, the record contains testimony to the effect that the partnership and the corporation known as Abraham Levitt & Sons transferred to petitioner the profits which had resulted from the sales of the improved land formerly owned by Rockville. This stipulation and testimony is difficult to understand, at first, in the light of the method of payment to Rockville which had been followed. Rockville had been paid $7,500 in cash, and the balance of $77,480 had been paid by assignment of purchase money mortgages aggregating the latter amount. When Abraham Levitt & Sons sold the lots and houses it could have realized a profit, which it retained, by receipts of cash payments in excess of total cash of $7,500 which had been paid to Rockville. This brings us to Edelman's claim which was made in November, 1939. Edelman's attorney wrote petitioner a letter which stated, inter alia, that the attorney had been retained to * * * commence an action in equity against you [petitioner corporation] to account for certain real property or the proceeds thereof received by you in violation of the rights of my said *310 clients, in which action I intend to apply for the appointment of a Receiver of your Company. The letter is vague. Petitioner has explained Edelman's demand to some extent, stating that it had reference to the transactions of the partnership and the corporation, known as Abraham Levitt & Sons, with Rockville which were completed in 1932, full payment for the purchases having been made in 1932. It is clear, therefor, that Edelman's demand has no relation to any business transactions of petitioner. The nature of Edelman's claim must be considered. The record does not show the exact object of the claim. If it was to recover money in excess of the total amount which Rockville had received from Abraham Levitt & Sons, then petitioner was being asked to pay money as a transferee of the profits and property of Abraham Levitt & Sons. The officers and directors of Abraham Levitt & Sons, and the members of the prior partnership, would be, of course, the persons against whom Edelman would be expected to proceed but they were not, apparently, the objects of Edelman's demand in 1939. If an action had been instituted by Edelman it is likely that he would have joined in the action the officers of *311 petitioner who had been the officers of the preceding partnership, and it seems that petitioner would have been joined in the action only upon some theory of having acquired money or property, or both, to which Abraham Levitt & Sons, the transferor, did not have any valid title. Petitioner cannot bind this Court by its own construction or interpretation of the facts. It is the duty of this Court to analyze such facts as have been presented and to endeavor to make a reasonable and objective interpretation of them. The question turns upon the nature of Edelman's claim. It is necessary to search the illusory facts for some clue to what Edelman sought. Since petitioner did not have any dealings with Rockville, the only reasonable view to take of the situation is as follows: (1) Either Edelman sought to recover money from petitioner upon the theory that it had received money or property from a transferor which had no legal title to the money or property, or, (2) Edelman, in fact, was seeking to recover money from the Levitt family, in the nature of damages. The second possible view need not be considered because the record does not indicate that Edelman's claim was made upon any members *312 of the Levitt family, or on anyone other than petitioner corporation. If the claim was made under the first hypothesis, Edelman sought to recover from petitioner property to which it had no title. And, if the agreement to pay Edelman $65,000 was to settle a claim of that nature, the payment must be regarded as a payment to get rid of a claim against some of the assets of petitioner. Such payment would have to be held to be a capital expenditure for which no deduction is allowable, see ; affd., , because it was paid in settlement of a contest involving the ownership of property. See also, ; affd., (on the point for which the case is cited here), . In its brief petitioner argues that its title to assets acquired from Abraham Levitt & Sons was clear and undisputed. That is a conclusion made by petitioner. It appears that Edelman thought otherwise. However, it is immaterial that petitioner had a good title, assuming it did. It matters not that a claim to *313 an interest in property is without merit. If the taxpayer has made a payment to settle a claim of another to its own property the expenditure must be regarded as an additional expense of the property. ; affd., . Petitioner has tried to avoid, at times, any admission that Edelman's claim had any relation to petitioner's right to any profits, proceeds, or property transferred to it by Abraham Levitt & Sons. Thus, in its briefs, petitioner contends that it did not pay the $65,000 to settle any liability it had previously assumed; that respondent has not suggested that Edelman's demand was made to collect debts owing to Rockville; that Edelman's claim was based on some theory in equity and not on any contractual right; that Edelman's claim that his demand arose out of the transactions between Rockville and Abraham Levitt & Sons did not motivate petitioner in making the settlement; and that his claim does not furnish the test which this Court must accept to ascertain "the character of the transaction which occasioned the payment," . *314 However, petitioner states at other times in its briefs that the only act on the part of the taxpayer which brought Edelman into contact with it was its acquisition of the assets of Abraham Levitt & Sons; that Edelman's sole threat was to recover those assets "although to support it he advanced only some vague legal theory by which a great part of said assets were said to be profits, and profits on profits belonging to three quarters of the stockholders of Rockville Center Community Corporation"; and that the actual and real transaction which impelled petitioner to settle was the taxpayer's acquisition of assets against which Edelman's demand for profits was aimed. Such statements in petitioner's briefs must be taken to represent an admission by petitioner that Edelman's claim was made against petitioner as the recipient of property and proceeds formerly owned by Abraham Levitt & Sons and which Edelman believed should have gone to the stockholders of Rockville. In our opinion the record supports only that view of the nature of Edelman's claim. Petitioner argues that the question should be determined by giving weight solely to the motive of the officers of petitioner in settling *315 the claim. Petitioner states that the officers considered the claim to be without merit but that they regarded the threat of a lawsuit and the filing of an action to be a potential interference with the conduct of business. Petitioner points to the status of its business at the time. It was engaged in building about 200 homes to be sold at an average price of $10,000 and the officers believed that a court proceeding would result in unfavorable publicity and that such publicity would affect sales adversely. They believed, also, that a receivership application might result in the filing of materialmen's liens on the building operations. They believed, also, that a court proceeding might affect adversely petitioner's credit with banks and others. Petitioner argues, next, that the question is no different than it would be if the threatened action had been instituted and petitioner had paid legal fees and deducted them. [1] All of this argument represents an effort to establish that the expense of $65,000 was incurred, from petitioner's viewpoint, to preserve the profits of its own current business. Petitioner contends that the situation here resembles that in . *316 In International Shoe an action was filed by a competitor alleging that International Shoe had conspired to destroy competition. The action was filed in 1930, and by 1931 International Shoe had been subjected to much annoying publicity. The publicity had become a fact. It was not a matter of conjecture. An attorney who advised International feared that an unfortunate result might develop if the case went to a jury, largely because the former president of the company was not living. The suit was compromised. The reason the expenses of compromising the litigation in the International Shoe case was allowed was because the litigation proximately resulted from the carrying on of business; the competitors' action complained of International's method of conducting its business. The International Shoe case is not controlling in this proceeding. Edelman's threatened litigation did not involve any complaint against petitioner's method of conducting its business, no action was instituted against petitioner, and nothing had transpired, neither publicity or anything else, which was, in fact, interfering with the conduct of petitioner's business. *317 In , on which petitioner relies, a deduction was allowed for $100,000 which was paid for the purpose of avoiding litigation. That case is distinguishable because the corporation there had performed certain acts which gave rise to the threatened litigation. Here, petitioner had not acted in any way, itself, to cause Edelman's threatened litigation, and he looked to petitioner only as a recipient of property formerly owned by another corporation whose acts caused Edelman's threats. Other cases relied upon by petitioner are distinguishable on their respective facts, to wit: , because, here, Edelman had never been a stockholder in petitioner or connected with petitioner's predecessors; , because Edelman's claim did not assert that petitioner, itself, had done any acts to injure the stockholders of Rockville; , because the threatened litigation was not an outgrowth of petitioner's business activities. We held, in , *318 that an expenditure to avoid threatened litigation under circumstances where the evidence did not show any legal liability in the taxpayer was not deductible as a business expense. That case is in point here because petitioner admits that it was not under any legal liability for the acts of Abraham Levitt & Sons. In , the taxpayer claimed that it compromised a suit by a payment of $4,000 in order to protect its credit. We said, "But it was also to protect the assets which it had acquired, for its credit could not have been affected save through the questionableness of its title to its assets," and denied deduction of the expense as a business expense. Here, we believe that petitioner's credit could not have been affected by the threatened litigation, and, if the threatened action had been instituted there is reason to believe that it would have involved a claim against petitioner's assets acquired from a predecessor. The record shows that the threatened litigation did not involve any matters proximately related to petitioner's past actions in the conduct of its own business and that is one reason for denying the *319 deduction as a business expense. See ; . Another reason for denying the deduction as a business expense is that Edelman's claim was founded upon the acts and transactions of individuals connected with a partnership and a corporation antecedent to the existence of petitioner, and the only possible liability in petitioner, if any, arose exclusively from its receiving the property which its predecessors may have acquired improperly. . The problem was not connected with petitioner's business. Furthermore, to incur an expense to avoid such uncertain contingencies as petitioner's officers believed would result if Edelman filed an action against petitioner involving such groundless claims was neither an ordinary or a necessary step for petitioner to take in the conduct of its business. The greatly feared publicity, curtailment of credit, filing of liens, and such, might not have resulted from the filing of an action by Edelman, and, certainly, there is nothing *320 in the record to support the view that such would have been the effect. Petitioner has failed to show a business necessity for the incurred expense. Where such business necessity is not shown, the mere belief that expediency justified the expense is insufficient to meet the statutory requirements of section 23 (a) (1). . It is held that the incurred expense of $65,000 is not deductible as an ordinary and necessary business expense. The second question is whether petitioner sustained a loss in the taxable year by virtue of incurring the same expense for which a deduction under section 23 (f) is allowable. Petitioner contends, in the alternative, that the expense was incurred to protect itself against threatened damage. Petitioner relies on . That case is distinguishable because its facts showed that the taxpayer's property was threatened with serious and permanent damage. Here, the possible injury to petitioner's credit and to the operation of petitioner's business from the threatened litigation was entirely a matter of speculation *321 and, consequently, the situation here is outside the conclusion in the Seufert case. In other respects, it cannot be said that petitioner sustained a loss on account of a voluntary expense. Decision will be entered for the respondent. Footnotes
1. This argument is not sound because, if the threatened action had been instituted, the expense of defending the suit would have been incurred in preserving assets which petitioner had acquired when it was created.↩